IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY STEFANOWICZ,<br>701 Moore Avenue<br>Lewisburg, PA 17837<br><br>        PLAINTIFF,<br><br>vs.<br><br>BUCKNELL UNIVERSITY,<br>KARI CONRAD, and<br>WAYNE BROMFIELD, ESQ.<br>Lewisburg, PA 17837<br><br>        DEFENDANTS. | CIVIL ACTION NO.: 02-6000 |

**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, by and through her attorneys, Villari, Brandes & Kline, P.C., hereby moves this Honorable Court for entry of an emergency preliminary injunction against the Defendants pursuant to Fed. R. Civ. P. 65, and in support thereof asserts as follows and requests the following relief:

    a.    **Introduction.**

1. Plaintiff's Emergency Motion for Preliminary Injunction seeks to temporarily halt and otherwise enjoin the unconstitutional and unlawful conduct and/or actions by Defendants, Bucknell University, Kari Conrad, Associate Dean for Students at the University, and Wayne Bromfield, the University's General Counsel (collectively referred

1

to as "Defendant Bucknell") with respect to the University's improper initiation of its internal adjudicatory procedures regarding victims of sexual misconduct, here Plaintiff, including the scheduling of a Hearing Board for Sexual Misconduct (HBSM).

2. Specifically, Plaintiff seeks to, *inter alia*, enjoin Defendants from commencing the University's Hearing Board for Sexual Misconduct (HBSM) adjudication, <u>scheduled for Tuesday October 5, 2010, starting at 5:00 p.m.</u> Plaintiff also seeks to enjoin further improper disclosure of certain documents and information by the University to her attacker and her attacker's attorney, with mandated return of all such documents already disclosed.

### b.     The Sexual Assault of Kelly Stefanowicz on September 5, 2010.

3. On and before September 5, 2010, Plaintiff, Kelly Stefanowicz (Ms. Stefanowicz), was a 19 year old fully matriculated sophomore student at Bucknell University, living in an on campus dormitory. Prior to attending college, she was a long time citizen and resident of the Commonwealth of Pennsylvania, living with her parents.

4. On and before September 5, 2010, Mr. Reed Dempsey (Mr. Dempsey) was also a 19 year old student at Bucknell University, living in the same dormitory as Ms. Stefanowicz.

5. On September 5, 2010, at about 2:00 a.m. Mr. Dempsey physically removed Ms. Stefanowicz against her will from her dormitory room, carried her to his room where he threw her onto a futon, mounted her and grabbed her wrists, pinning her arms above her

head. He then forcefully struck her breast and groin, and ground his hips into her while bearing an erection.

6. In an effort to escape her attacker, Mr. Stefanowicz pleaded with him to stop.

7. Mr. Dempsey persisted in his attack, at which point Ms. Stefanowicz kneed him in or about his groin and fled the room.

8. Mr. Dempsey pursued Ms. Stefanowicz into the hallway at which point Ms. Stefanowicz kicked him in the groin and slapped him in the face in order to get away from him. However, Mr. Dempsey grabbed and pulled her arms behind her back and forcefully drove her to the ground, where Ms. Stefanowicz struck her face and head.

9. As a result of injuries sustained in the attack, Ms. Stefanowicz was seen at Evangelical Hospital in Lewisburg, Pennsylvania, where a form of sexual assault work-up was performed with a uniformed female Bucknell University Police Officer present.

10. The work-up was found to be positive, including, *inter alia*, as to the presence of substantial bruising to Ms. Stefanowicz's face, right breast, thighs and wrists (from her arms being physically restrained by her attacker). True and correct copies of (6) six photographs depicting some of the bruising attached hereto as Exhibit "A."

   c.   **The Criminal and University Charges Against Reed Dempsey.**

11. Subsequently, the District Attorney of Union County, Pennsylvania – in conjunction with the Bucknell University Police Department -- filed criminal charges against Mr. Dempsey

related to the attack (including indecent assault, false imprisonment, simple assault, disorderly conduct and harassment).

12. Mr. Dempsey is represented by counsel with regard to the criminal charges.

13. A condition of his bail is that he remains off campus premises.

14. The criminal charges are pending, with a preliminary hearing initially scheduled for September 23, 2010, but strategically rescheduled at Mr. Dempsey's request to November 4, 2010.

15. Ms. Stefanowicz also filed internal charges with the University against Mr. Dempsey.

16. Mr. Dempsey was suspended from the University and issued a *"persona non grata"* Order by the Bucknell University Police Department, which prohibits him from being on campus.

### d.    The Retaliatory Charges Against Kelly Stefanowicz.

17. In clear retaliation, Mr. Dempsey attempted to have the District Attorney and the University's Police file criminal charges against Ms. Stefanowicz. The District Attorney and University Police each refused to file any criminal charges against Ms. Stefanowicz, the victim.

18. In an effort at further retaliation, Mr. Dempsey subsequently filed a student complaint with the University against Ms. Stefanowicz contending she sexually assaulted him by kicking him in the groin, and that she filed false charges against him.

19. The charges by Mr. Dempsey were reviewed by Defendant, Kari Conrad, Associate Dean for Students at the University. To make matters worse, it was her decision not to dismiss them despite the fact that the Bucknell University Police Department and the Union County District Attorney's Office each refused to charge Plaintiff despite the urging of Mr. Dempsey's criminal defense attorney.

      e.    **Contrary to University Policy, the University Improperly Decides to Proceed with an Internal Hearing.**

20. On September 10, 2010, Plaintiff's undersigned counsel, Anthony J. Voci, Jr., Esq., was advised by defendant, Kari Conrad, Associate Dean for Students, that it was University policy that no action would be taken with respect to the internal charges until some time after conclusion of Mr. Dempsey's criminal preliminary hearing (which was then set for September 23, 2010). A true and correct copy of Plaintiff counsel's confirmatory email to Dean Conrad (copied to defendant, Wayne Bromfield, Esq.), dated September 14, 2010, is attached hereto as Exhibit "B." There was no reply to the e-mail.

21. Shortly after that conversation, Dean Conrad met with Kelly Stefanowicz and reiterated the University policy of no action until after the preliminary hearing, because, *inter alia*, statements are not to be distributed to the criminal defendant before the criminal preliminary hearing is completed.

22. Subsequently, however, on or about September 14, 2010, Mr. Dempsey's criminal defense attorney successfully moved the local Magisterial District Court to postpone the preliminary hearing until November 4, 2010.

5

23. Incredibly, the next day, Plaintiff's counsel was notified by defendant, Wayne Bromfield, Esq. (general counsel for the University, and former Judge on the Union County, Pennsylvania Court of Common Pleas), that the University was going to hold its internal hearing on October 5, 2010, despite the fact the University knew this was before Mr. Dempsey's rescheduled preliminary criminal hearing and knew this was directly contrary to the University's stated policy. This decision was joined in by Dean Conrad.

24. On September 21, 2010, Plaintiff's undersigned counsel wrote to Dean Conrad, advising that the University was acting contrary to its policies, that the astonishing actions by the University were allowing the perpetrator of a sex crime to misuse the internal process and continue to victimize the student-victim, and urging the University to revisit the decision to deny Ms. Stefanowicz's request to dismiss the retaliatory internal charges filed against her. A true and correct copy of the September 21st letter is attached hereto as Exhibit "C."

25. Upon information and belief, the District Attorney specifically requested that the University not turn over any materials or statements to the criminal defendant or his attorney, in order to assure a proper criminal preliminary hearing.

26. In complete violation of this request and well known standard operating procedure in criminal cases, on September 23, 2010, the University obstructed the process and turned over to Mr. Dempsey and his criminal defense attorney the written statements of Kelly Stefanowicz and other witnesses. See, letter dated September 23, 2010, from Mr.

Dempsey's criminal defense attorney to Defendant Kari Conrad, confirming receipt of the materials from the University, a true and correct copy of which is attached hereto as Exhibit "D."

27. On September 29, 2010, Plaintiff's undersigned counsel, Mr. Voci, wrote to defendant, Mr. Bromfield, stressing that the University was acting in an unlawful manner and that its actions were subverting the criminal justice system. Counsel cited to relevant case law which ruled that it is improper to allow the direct confrontation of the victim by her attacker in a University-based code of conduct setting. Counsel further noted that the University's conduct was colored by bias and discrimination against a female victim of a sex crime. Finally, counsel summarized certain events up to that date and reiterated the points and requests outlined in the September 21, 2010 letter. Plaintiff's counsel provided a 24-hour deadline within which to respond to the letter. A true and correct copy of the September 29th letter is attached hereto as Exhibit "E." No response has been received as of the filing of this Motion.

28. As further evidence of Plaintiff's effort to protect herself without this Court's emergency intervention, she enlisted the assistance of a Pennsylvania State Senator to intercede on her behalf with the University. On October 1, 2010, Pennsylvania State Senators Tomlinson and Yaw wrote to the President of the University advising him of their concerns about the hearing process and urging the University to delay the hearing. A true and correct copy of the Senators' letter is attached hereto as Exhibit "F."

29. Plaintiff's counsel was provided with a copy of the letter, and promptly forwarded it to Defendant, Mr. Bromfield, as general counsel for the University.

30. In a final attempt to delay the hearing and avoid the filing of this Motion, Plaintiff's counsel wrote to Mr. Bromfield on October 1, 2010, in which he enclosed the Senators' letter, requested that the University stand down, and advised that if it did not, Plaintiff would have no alternative but to file this Motion.

31. Less than an hour later, Mr. Bromfield wrote to Plaintiff's counsel in response:

> I received your fax. Consistent with Title IX and our Student Code of Conduct, the hearing will remain scheduled to begin October 5, 2010.
>
> We are gathering from your protests that you believe the charges filed by Reed Dempsey were meritless and false. As you are likely aware, if that is established the Student Code of Conduct <u>contains a very serious charge</u> of False Accusation or Testimony, and Retaliation, Threatening, or Intimidation of Participants in a Hearing. Recourse is therefore available for a person victimized by false prosecution.

Email from Wayne Bromfield, Esq. to Anthony J. Voci, Jr., Esq., dated October 1, 2010, 1:58 pm. (emphasis added), a true and correct copy of which is attached hereto as Exhibit "G."

32. The charges cited by Mr. Bromfield are precisely those Mr. Dempsey filed in retaliation against Ms. Stefanowicz.[1]

33. By the University's own words through Mr. Bromfield, it has now acknowledged that merely by Mr. Dempsey proffering his charges, Ms. Stefanowicz is in jeopardy, a

---

[1] Mr. Bromfield's response omits the fact that, as to Plaintiff's charges against Mr. Dempsey, she is equally dismayed by having the hearing structured as cited and held before the resolution of the criminal preliminary hearing and associated processes.

jeopardy created by a hearing process that does not afford her the right to counsel, the right to remain silent and not attend, the right not to be cross-examined by her attacker, the right not to be in the presence of or close proximity to her attacker, and the right to provide testimony in a safe environment, one which does not subject her to undue anxiety, nervousness or any other psychological impediment that could improperly cause those sitting in judgment of her to have their views of her testimony or credibility unfairly and improperly skewed.

34. Plaintiff is now being forced by University officials to appear at a code of conduct hearing scheduled for October 5, 2010, where she will be subjected to questioning by her attacker, personally, to (a) substantiate her charges against Mr. Dempsey (despite the fact the District Attorney is prosecuting Mr. Dempsey), and (b) to answer to his charges, all without the assistance of counsel, who are prohibited from the hearing pursuant to University policy, and all of which will be recorded. For the reasons described below, this is all a thorough violation of the Constitution and applicable statutory law.

    **f.    University Policies and Procedures Regarding Code of Conduct Matters, and Defendants' Failure To Conform Thereto.**

    **1. The University's Policy of University Responsibility.**

35. Defendant Bucknell's "Pledge of University Responsibility," sets forth certain University policies. It provides in pertinent part that "in order to foster and promote an environment in which students can develop intellectual maturity, personal conviction and strength of character, the University recognizes its responsibility to <u>provide support without undue</u>

<u>restraint, to provide mentors rather than mandates, to allow individual exploration without institutional confinement</u>" <u>See</u> "Bucknell University, Student Handbook (2010-2011)," at 4, accessible at http://www.bucknell.edu/Documents/DeanOfStudents/StudentHandbook2010-11.pdf (last accessed Sept. 30, 2010). (emphasis added).

36. Furthermore, the University's Pledge highlights the University's commitment to protect students' confidential information, provide fair and impartial treatment, to prohibit harassment or discrimination, and to protect the privacy of students. <u>Id</u>.

37. With respect to the promotion of equality, the University sets forth a commitment "to diversity, civility, mutual respect, and common courtesy ... [and] an environment that is free of harassment and discrimination." <u>Id</u>. at 6.

### 2. The University's Student Code of Conduct, Hearing Board for Sexual Misconduct (HBSM) and Adjudicatory Process.

38. In setting forth its Student Code of Conduct, Defendant Bucknell has created various categories of violations. "Category I" violations include the "False Accusation or Testimony, and Retaliation, Threatening, or Intimidation of Participants in a Hearing," and, more specifically, where "<u>a person retaliates against, threatens, or intimidates a participant(s) who has been involved in a campus hearing</u> ...." <u>Id</u>., at 94, ¶ 8.

39. Category I violations also encompass sexual misconduct, wherein:

<u>Sexual misconduct is defined as threats of, or deliberate physical contact of a sexual nature that is against another person's will or without consent</u>. In its most severe form, sexual misconduct is manifested by any form of sexual penetration in

circumstances in which it was not reasonable for the perpetrator to believe that the victim had freely given affirmative consent to the act·

Id. at 97, ¶ 22 (emphasis added).

40. Additionally, the University sets forth three levels of sexual misconduct:

> Level One: Rape or attempted rape (anal, oral, or vaginal intercourse without consent or against another's will) whether achieved through force, threat or intimidation, or advantage gained by the aggrieved party's mental or physical incapacity or impairment of which the perpetrator was aware or should have been aware. Intercourse involves penetration, however slight, with any object (penis, finger, or other instrument).
>
> Level Two: Any actual or attempted non-consensual or forcible sexual touching, including but not limited to, fondling, kissing, groping, and deliberate physical contact with an individual's intimate parts (defined as genitalia, groin, breast, buttocks, or clothing covering them) or forcing an unwilling person to have contact with another's intimate parts.
>
> Level Three. Deliberate or reckless threats, actual or implied, of physical contact of a sexual nature that result in intimidation, fear or reasonable apprehension of a sexual assault or physical harm. These might include, but are not limited to threatening gestures or words conveyed directly or indirectly (e.g., through graffiti, written articles, radio broadcasts, etc.), obscene phone calls or computer contact, stalking, indecent exposure, voyeurism, sexual harassment (see policy statement in University Policies and Regulations section), cyberstalking, or transmission of a recording or pictures of the sex act.

Id. at 97, ¶22; see also, at 127-128.

41. The University acknowledges that some violations of the Student Code of Conduct, including sexual misconduct, "are viewed as sufficiently serious to warrant filing of charges by the University <u>with the local criminal justice system</u> in addition to the disciplinary action within the University." Id. at 108 (emphasis added). *Clearly, the*

11

*University understands the import of complying with criminal laws, cooperating fully with law enforcement authorities, and not doing anything to obstruct justice.*

42. With respect to the University's internal adjudicatory hearing process, the University sets forth that "alleged Category I violations of the Student Code of Conduct will normally be heard by a Hearing Board of the Community Conduct Board." Id. at 109.

43. With respect to non-adjudicatory options, the University sets forth that "[b]efore a charge has been filed, an aggrieved party may request – through the SCA, the SCASM, or the Dean of Students – to meet with the would-be respondent to express his/her feelings regarding an incident that caused offense and to share the impact of the incident on him/her." Id. at 110.

44. The University describes such process as a "Voluntary Facilitated Dialogue" (VFD) that "carries no authority to impose sanctions and will take place in the context of a counseling or educational encounter...[F]urther, participation in [VFD] does not prevent one or both participants from pursing conduct or legal options thereafter." Id.

45. Furthermore, VFD "is a purely voluntary and counseling-oriented process for both of the involved parties. The official who facilitates has no authority to assign or impose sanctions, and [VFD] is not a conduct of quasi-conduct proceeding (no verdict is rendered and no records are kept)." Id.

46. In touting the advantages of the VFD, the University states that VFD "provides a relatively safe and controlled environment, because the facilitators can set down basic ground rules and provide third-party neutrality." Id. at 111.

47. Despite this, the University also acknowledges specific harms or disadvantages of the VFD, wherein although no records are kept, VFD "can be utilized for informal discovery, that is, both the potential aggrieved party and the would-be respondent can use the session to gain information and gauge reactions, which could be brought into legal (civil or criminal) proceedings later." Id.

48. In fact, the University points out that "all parties at [VFD] sessions, including the facilitators, <u>should be aware that they can be subject to subpoenas (if a legal case develops), and they should understand that courts will not necessarily recognize the confidentiality of Bucknell's [VFD] sessions</u>" Id. (emphasis added).

49. Additionally, the University highlights the harm to the victim wherein "depending on the content and tone of the dialogue, the aggrieved party may find not closure but <u>re-victimization</u>; and the would-be respondent may feel herself or himself wrongly targeted in the presence of additional individuals" Id. 112 (emphasis added).

50. Pursuant to Student Code of Conduct, respondents in a matter pertaining to sexual misconduct "<u>are required to appear in person</u>" Id. (emphasis added). Failure to appear may cause that the charges be "adjudicated in absentia by the Administrative Hearing Officer or Hearing Board." Id. at 115 (respondent "who fails to appear before the

Hearing Board as instructed or required may be subject to having those charges adjudicated in absentia by the Administrative Hearing Officer or Hearing Board."); and see id. at 127 ("a student who fails to comply fully with a sanction imposed by a Hearing Board will be subject to immediate suspension from the University or other penalties imposed by the Dean of Students without benefit of further hearing").

51. Furthermore, Bucknell University is explicit that a "respondent, who has chosen not to appear, cannot use the inability to offer personal testimony as grounds for appeal, should an undesired outcome be the result." Id. at 113.

52. More significantly, refusal of a student to appear at a hearing board meeting for a Category I offense constitutes that a particular student "commits a Category I offense" and other sanctions, reprimands, punishment, and possibly University suspension may be imposed. Id. at 94, ¶9 (emphasis added).

53. With respect to a assistance at such hearings, "both the respondent and the aggrieved party have the right to be assisted by an advisor of their choice from within the University community (that is a person drawn from the ranks of current students, current faculty, current administrative staff, or current support staff members) ...." Id. at 120.  Such University advisors "who are practicing lawyers, or who have law degrees, are ineligible to serve as advisers to either the respondent or aggrieved parties." Id. at 120 (emphasis added); see also id. at 120 (stating "University hearing officer may be any person drawn

from the current Bucknell student body, faculty, administrative staff, or support staff, provided that person is not a lawyer.") (emphasis added).

54. Last, the University recognizes the significance of a student's confidentiality with respect to such hearings, namely that "the respondent and the aggrieved party generally have the right to be assured that his/her involvement in a Student Code of Conduct violation or identify will not be disclosed by the University ...." Id. at p. 121; see also id. at 127 (discussing maintenance and use of conduct records). *And yet, the University has already provided certain written statements of Plaintiff to her attacker, Mr. Dempsey, notwithstanding the fact that, upon information and belief, the District Attorney requested the University not do so.*

> g. **Defendant Bucknell's History of Unequal, Discriminatory, and Disparate Treatment with Respect to Sexual Misconduct Hearings.**

55. Despite Defendant Bucknell's purported process and procedure pertaining to the HBSM's conducting and adjudication of hearings related to student sexual misconduct, such processes have been the subject of much criticism. As the Center of Public Integrity recently highlighted by way of study and report, a "thick blanket of secrecy still envelops cases involving allegations of sexual assault on campus." Kristin Lombardi, *Sexual Assault on Campus Shrouded in Secrecy: High Rates of Rape, Closed Hearings, and Confusing Laws*, THE PUBLIC INTEGRITY CENTER, Dec. 1, 2009, available at

15

http://www.publicintegrity.org/investigations/campus_assault/articles/entry/1838/ (last accessed Sept. 30, 2010).

56. Additionally, a recent report by the U.S. Department of Justice sets forth that "the vast majority of students who are sexually assaulted remain silent – just over 95 percent ... [and] those that do come forward can encounter mystifying disciplinary proceedings, secretive school administrations, and off-the-record negotiations." Id. at 2.

57. Bucknell University is no exception. "[I[n November 2003, Mallory Shear-Heyman, then a sophomore at Bucknell University ... underwent a confidential mediation after reporting being raped in her dorm by a fellow student." Id. at 9 (the victim described that there was a legal waiver "she was required to sign prior to participating in mediation – a waiver she says she didn't fully understand.").

58. The U.S. Department of Education deemed such mediations as improper since "an intimating element exists between the victims and their assailants because, like other serious assault, sexual assault is a violent act ...." Id. at 9. Yet, Defendant Bucknell has defended such practices by stating that such VFDs "only occur[] at the request of an accusing student, with the willing participation of an accused student.... [A]ny power imbalance...is evened out by the presence of two administrators – one male, one female – guiding the conversation and assuring a comfortable setting." Id. at 9.

59. As argued in Plaintiff's association Memorandum of Law, Defendants' compelling Plaintiff to attend the October 5, 2010 HBSM hearing is by definition not voluntary, it

violates Plaintiff's rights under the Constitution, and it is even inconsistent with Bucknell University's own policies regarding due process, fairness, and equality. Consequently, the Defendants' efforts to compel Plaintiff's attendance under the circumstances must be enjoined.

### h.  RELIEF REQUESTED

60. Pursuant to the University's Student Code of Conduct, Plaintiff is being compelled to attend the HBSM hearing, at which she will be forced to make statements and be subjected to cross-examination by Mr. Dempsey himself (with the questions likely prepared by his criminal defense attorney). She is prohibited by the University from having counsel at her side. Moreover, the hearing is recorded, such that statements she is compelled to make can be twisted against her by her attacker during his later criminal prosecution and/or in an effort by him again to seek criminal charges against his victim.

61. Unless the Defendants are stopped, Plaintiff faces the unconscionable and untenable quandary of:

*(a) participating in Defendant Bucknell's HBSM hearing, which will compromise her constitutionally protected rights to due process under the Fourteenth Amendment to the Constitution, and other federal rights including a victim's right to assure the Commonwealth has a level playing field in the criminal prosecution of her attacker, and which will force her to be in close proximity to and*

*under the cross-examination control of her attacker, of whom she remains in great fear, or*

 *(b) opting not to participate in the hearing and thereby be exposed to a high risk of school sanctions, including being found guilty <u>in absentia</u> by the University on the unfounded charges filed in retaliation by Mr. Dempsey (which would have horrible repercussions for Plaintiff now and forever into her future), suspension for failing to appear at the hearing as it relates to her assault at the hands of Mr. Dempsey, and other academic punishments, thereby implicating her property and other protected interests in her ongoing education.*

62. Plaintiffs Emergency Motion for Preliminary Injunction should be granted because there is no adequate remedy at law and Plaintiff has a reasonable probability of success on the merits pertaining to violations of: a) her rights to due process and equal protection under the Fourteenth Amendment; b) her rights to counsel under the Sixth Amendments; c) her rights under Title IX (20 U.S.C. §§ 1681-1688); d) her rights under the Clery Act (20 U.S.C. § 1092); and e) her rights under the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g).

63. Plaintiffs Emergency Motion for Preliminary Injunction should be granted where Plaintiff will suffer immediate and irreparable harm if compelled to attend and participate in the HBSM hearing on October 5, 2010.

64. Plaintiffs Emergency Motion for Preliminary Injunction should be granted where Plaintiff will suffer immediate and irreparable harm if she does not attend the hearing on October 5, 2010.

65. Plaintiffs Emergency Motion for Preliminary Injunction should be granted where the requested emergency preliminary injunctive relief is in the interest of the public.

WHEREFORE, for the reasons set forth herein, and in Plaintiff's Memorandum of Law in support, Plaintiff's Emergency Motion for Preliminary Injunction should be granted, such that Defendants be enjoined from commencing the University's Hearing Board for Sexual Misconduct (HBSM) adjudication, <u>scheduled for Tuesday October 5, 2010, starting at 5:00 p.m.</u>, and Defendants are enjoined from further improper disclosure of certain documents and information to Plaintiff's attacker and her attacker's attorney, with mandated return of all such documents already disclosed and destruction of all copies in the possession of Plaintiff's attacker and/or her attacker's attorney..

Respectfully submitted,

*/s/* Paul D. Brandes

Peter M. Villari, Esquire
Paul D. Brandes, Esquire
Anthony J. Voci, Esquire
Attorney I. D. Nos. 26875; 59769; 61777
VILLARI, BRANDES & KLINE, P.C.
8 Tower Bridge, Suite 400
161 Washington Street
Conshohocken, PA 19428
(610) 729-2900
*Attys. For Plaintiff*

Dated: October 2, 2010