IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| KELLY STEFANOWICZ, | : | |
| Plaintiff, | : | No. 10-CV-2040 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| BUCKNELL UNIVERSITY, et al., | : | |
| Defendants | : | |

### MEMORANDUM ORDER

Pending before the Court is Plaintiff Kelly Stefanowicz's emergency motion for a preliminary injunction. (Doc. No. 2.) In her motion, Plaintiff asks the Court to enjoin Defendants from conducting a Hearing Board for Sexual Misconduct ("HBSM hearing") involving Plaintiff and Reed Dempsey, on October 5, 2010. For the following reasons, the Court must deny the motion for a preliminary injunction.

### I. BACKGROUND

Plaintiff is a 19-year-old student who lives on campus at Bucknell University in Lewisburg, Pennsylvania. Plaintiff alleges that on September 5, 2010, at approximately 2:00 a.m., she was physically and sexually assaulted by Reed Dempsey ("Dempsey"), also a 19-year-old Bucknell student. As a result of her injuries, Plaintiff was treated at Evangelical Hospital in Lewisburg, where an evaluation resulted in a determination that evidence, including substantial bruising to Plaintiff's face, right breast, thighs and wrists, supported Plaintiff's allegation of sexual assault.

The Union County District Attorney, in conjunction with the Bucknell University Police Department, filed criminal charges against Dempsey related to the attack, and those charges are

1

pending. A preliminary hearing was initially scheduled for September 23, 2010, but on Dempsey's motion was rescheduled to November 4, 2010. Plaintiff also filed an internal charge at Bucknell against Dempsey.

Plaintiff avers that, in retaliation for her claims of assault, Dempsey attempted to have the Union County District Attorney and Bucknell Police file criminal charges against her. Both the Union County District Attorney and Bucknell Police refused to file any such charges. Dempsey subsequently filed a student complaint with Bucknell against Plaintiff "contending she sexually assaulted him in the groin, and that she filed false charges against him." (Doc. No. 1207 ¶ 18.)

Although Kari Conrad, Bucknell's Associate Dean of Students, advised Plaintiff's attorney that it was Bucknell's policy that no internal action would be taken until the conclusion of Dempsey's criminal preliminary hearing, this policy has not been followed in Plaintiff's case. On September 14, 2010, Dempsey's criminal defense attorney successfully moved the September 23, 2010 criminal hearing to November 4, 2010. The very next day, September 15, 2010, Plaintiff's counsel was notified by Defendant Wayne Bromfield, Bucknell's general counsel, that Bucknell would conduct its internal hearing on October 5, 2010. Despite counsel's urgent request on Plaintiff's behalf in two separate letters, the University has refused to postpone its internal proceedings.

Plaintiff filed the present motion for a preliminary injunction with this Court on Saturday, October 2, 2010.

## II. DISCUSSION

Plaintiff's motion for a preliminary injunction is governed by Rule 65(a) of the Federal Rules of Civil Procedure. An injunction is an "extraordinary remedy" that is never awarded as of

2

right. Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 375 (2008).[1] "A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (citing Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004)).

In her motion for injunctive relief, Plaintiff has pointed to several different constitutional provisions and federal statutes which she contends should be the basis for relief. The Court will write briefly to address Plaintiff's constitutional claims. The bulk of the Court's analysis, however, will be on the appropriateness of a preliminary injunction based on Plaintiff's Title IX claim.

### A. Constitutional Claims

Plaintiff first contends that injunctive relief should issue in this case because compelling her to attend the HBSM hearing on October 5, 2010, would violate her due process rights under

---

[1] Rule 65(a) specifically requires that a preliminary injunction be granted "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). "[T]he Rule requires, at the very least, 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997) (citations omitted). The formal five-day requirement under Rule 6(d) may apply to such a hearing; however, the Court may shorten the notice period "when circumstances warrant an expedited hearing." Id. at 156.
  In this case, Plaintiff filed her complaint seeking a preliminary injunction on Saturday, October 2, 2010 – only one business day before the hearing she seeks to enjoin. However, Defendants have had an opportunity to provide a brief in opposition, and the parties have had an opportunity to fully present their positions to the Court via lengthy telephone conference. Under the circumstances of this case, the Court will not deny the preliminary injunction based on a lack of notice to Defendants.

the Fourteenth Amendment. (Doc. No. 1207-3 at 4-5.) Specifically, Plaintiff argues that she is "being compelled to decide between going forward with the [HBSM] hearing at the expense of her constitutional rights as a victim or not attending the [HBSM] hearing, subjecting her to be found guilty in absentia and to academic sanctions that will permanently and adversely affect her future." (Id. at 6.) Plaintiff further argues that Bucknell has strayed from its internal guidelines by holding the HBSM hearing before criminal proceedings are completed. (Id. at 7.)

The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Generally, the Fourteenth Amendment protects individuals only against government action, unless the state has delegated authority to a private party, thereby making the actor a 'state actor' and implicating the Due Process Clause." Biener v. Calio, 361 F.3d 206, 216 (3d Cir. 2004) (citing NCAA v. Tarkanian, 488 U.S. 179, 195 (1988)). As the Third Circuit Court of Appeals has opined:

> The Fourteenth Amendment governs only state conduct, not that of private citizens. Rendell-Baker v. Kohn, 457 U.S. 830, 837-38 (1982). In other words, "[s]ection 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted). "Under color of law" and "state action" are interpreted identically under the Fourteenth Amendment. Id. at 339; see also Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Thus, a plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor. See Benn v. Universal Health Sys., 371 F.3d 165, 169-70 (3d Cir. 2004).
>
> Although there is no "simple line" between state and private actors, Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001), we have explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly

4

> treated as that of the State itself." Leshko, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Mark, 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); see also Crissman v. Dover Downs Entm't Inc., 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts are crucial").

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). The Court finds that Plaintiff has failed to allege facts sufficient to establish a reasonable likelihood that Bucknell will qualify as a state actor for purposes of the Fourteenth Amendment due process analysis under one of these tests. The HBSM hearing at issue appears to be strictly an internal investigation, conducted freely from state intervention. Furthermore, the state actor in this case – the Union County District Attorney – has specifically adopted a different tact than Bucknell and cannot be said to be acting "in concert" with it.[2]

Plaintiff also alleges that she has Fifth and Sixth Amendment rights at stake which warrant delaying the HBSM hearing. Specifically, Plaintiff challenges Bucknell's policy that a HBSM hearing be held without the presence of counsel. The Court cannot agree that these constitutional provisions apply in this case. Like the Fourteenth Amendment claim, claims under

---

[2] The Court is also unconvinced that the actions by the Bucknell University Police Department bring the actions of Bucknell University under the "color of state law" umbrella. This is particularly true here, where Plaintiff acknowledges that the police department has refused to bring criminal charges against Plaintiff.

5

the Fifth and Sixth Amendments do not apply against Bucknell as a private entity. See Parham v. Johnson, 126 F.3d 454, 456 (3d Cir. 1997) ("The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants."); see also Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment restrict only federal governmental action and not the actions of private entities."). Plaintiff cannot demonstrate that there is any likelihood of success on the merits of her constitutional claims. Therefore, injunctive relief will not issue on this basis.

### B. Title IX Harassment Claim

Plaintiff asserts that the HBSM hearing will violate Title IX, 20 U.S.C. §§ 1681-1688. Title IX provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a). Unlike Plaintiff's previous constitutional claims, it is clear that Title IX does apply to Bucknell as the recipient of federal funding, and Bucknell does not dispute its application. As a result, the Court turns to the merits of whether a temporary restraining order should issue.

The Court must first determine whether Plaintiff has a reasonable likelihood of success on the merits of her claims. Crissman v. Dover Downs Entertainment, Inc., 239 F.3d 357, 364 (3d Cir. 2001). At the preliminary injunction stage, the Court "generally does not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success." Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004). Further, the Third Circuit has held that the standard for "likelihood of success" is not fixed. Rather, the Third Circuit has adopted a flexible approach,

counseling that the issuing court may balance the likelihood of success against the remaining equitable factors.  Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 923 (3d Cir. 1974) (ultimately finding the remaining factors were not "sufficiently compelling" to justify a preliminary injunction).  As such, where the balance of hardships tips toward the moving party, the moving party may satisfy its burden of establishing a likelihood of success on the merits on a lesser showing than is otherwise required.  Id.; see also Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953) (holding that when "the balance of hardships tips decidedly toward plaintiff . . . it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation").

In Count III of her complaint, Plaintiff alleges that "Defendants have violated and are continuing to violate Plaintiff's Title IX interests given the ham handed manner with which they have handled Plaintiff's attacks at the hands of Mr. Dempsey." (Doc. No. 9 ¶ 87.)  Plaintiff asserts that Defendants have failed to take proper measures to "minimize and eliminate the continuing harms to Plaintiff as a result of Mr. Dempsey's sexual misconduct, his post-incident retaliation, and the subsequent internal actions and proceedings . . . all of which constitute ongoing harassment." (Id. ¶ 88.)  Furthermore, Plaintiff alleges that Defendants have violated her Title IX interests by allowing Dempsey to file and pursue "retaliatory, harassing internal charges against Plaintiff." (Id. ¶ 89.)

In general, a recipient of federal funds may be liable in damages under Title IX only for its own misconduct.  In certain limited circumstances, an entity can be held liable for intentionally violating Title IX where the recipient of funds is deliberately indifferent to known

acts of harassment. Specifically,

> if a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it.

Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 644-45 (1999)). The elements of the claim have been outlined by the District Court for the Western District of Pennsylvania:

> To prevail in a claim of student-on-student sexual harassment under Title IX, the plaintiff must show that (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the harassment took place under "circumstances wherein the [funding] recipient exercise[d] substantial control over both the harasser and the context in which the . . . harassment occurred"; (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school."

Dawn L. v. Greater Johnstown Sch. District, 586 F. Supp. 2d 332, 365 (W.D. Pa. 2008) (quoting Davis, 526 U.S. at 645, 650).

In this case, whether Plaintiff is likely to succeed on her Title IX claim hinges on whether the HBSM hearing will qualify as further sexual harassment which is "so severe, pervasive, and objectively offensive" that it deprives Plaintiff of access to educational opportunities and benefits provided by Bucknell. See, e.g., Kelly v. Yale Univ., No. Civ. A. 3:01-cv-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) (finding that "further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university"). If such a hearing qualifies as further harassment, and Bucknell allows it to occur, liability will lie against Bucknell if it is

"deliberately indifferent" to the harassment.

Plaintiff's allegations raise serious concerns about the protections afforded to victims of sexual assault by Defendants. As part of the HBSM hearing, Plaintiff will be required to confront the person she has accused of sexual assault within one month of the alleged incident. Plaintiff must also face charges of sexual assault and false accusations that have been lodged against her by her alleged attacker – charges which she contends are made only to intimidate and retaliate against her. Additionally, Plaintiff is required to answer all relevant questions posed by Dempsey, even if Dempsey declines to answer questions. If Plaintiff fails to respond to Dempsey's questions, the Student Conduct Administrator has the option of temporarily or permanently dismissing the charges.

The Court notes, however, that several aspects of the HBSM hearing countervail these concerns. Perhaps most importantly, it was Plaintiff who first sought the relief accorded by Bucknell's internal procedures. Moreover, the questions prepared by Dempsey will be read by a member of the hearing board, and not by Dempsey himself. The questions posed are also required to be relevant and appropriate. The hearing board, through the chairperson, is responsible for determining the relevance and appropriateness of respondent's questions and is thus able to protect Plaintiff from any potential harassment or retaliation.

As a result, the Court cannot conclude on the basis of the complaint that there is a substantial likelihood that the procedures surrounding the HBSM hearing constitute further sexual harassment that is severe or objectively offensive and that Bucknell was deliberately indifferent to the harassment. Plaintiff will not be required to answer inappropriate or irrelevant questions, and the procedures do not allow for Dempsey to directly address Plaintiff. Indeed, the

procedures appear to attempt to leave no opportunity for further sexual harassment. In addition, the Court cannot find at this stage that Bucknell is "deliberately indifferent." A victim of peer harassment does not have a right to any particular remedial demand, immediate expulsion of the alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused. Davis, 526 U.S. at 648-49. Instead, a funding recipient is deemed to be deliberately indifferent "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id.

Ultimately, Plaintiff faces a heady burden in attempting to establish a Title IX violation by Defendant. This is not a traditional case of discrimination by an institution. Nor is it a case where the institution ignored discrimination. Rather, Plaintiff alleges that by adhering to established procedures for disciplinary procedures in this highly unusual case, Bucknell has disadvantaged the criminal prosecution of her attacker and subjected her to discrimination. That is, Plaintiff argues that by permitting her attacker to delay criminal proceedings and take advantage of the University's grievance procedure "for prompt and equitable resolution of student and employee complaints" pursuant to 34 C.F.R. § 106.8, Defendants have subjected Plaintiff to discrimination. The Court has found no cases, and the parties have provided none, in which a Title IX claim has been so couched or any analogous theory in which Plaintiff has prevailed under Title IX. To that end, the Court must finds that Plaintiff fails to establish a likelihood of success on the merits at this stage. Finding no substantial likelihood that Plaintiff can establish a Title IX claim, and lacking authority to refashion Bucknell's disciplinary policy as they apply to sexual assault victims, Davis, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." (citation omitted)),

the Court need not consider the remaining equitable factors and will deny Plaintiff's motion. See Penn Galvanizing Co. v. Lukens Steel Co., 468 F.2d 1021, 1023 (3d Cir. 1972) ("In view of the small likelihood of success on the merits heretofore discussed, we need not reach the question of irreparability of harm pendente lite.").

## III. Conclusion

Pursuant to this Court's analysis, the Court finds that a preliminary injunction is not warranted in this case. **ACCORDINGLY**, this 5th day of October 2010, it is hereby ordered that Plaintiff's motion is **DENIED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania